## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

DEBORAH CANADY,

      **Plaintiff,**

-vs-             **Case No.  6:05-cv-137-Orl-31KRS**

UNIVERSITY OF CENTRAL FLORIDA
BOARD OF TRUSTEES,

      **Defendant.**

_____

# ORDER

   The Plaintiff, Deborah Canaday ("Canaday"), alleges that the Defendant, University of
Central Florida Board of Trustees ("UCF"), has violated the Family Medical Leave Act, 29 U.S.C.
§§ 2601, *et. seq.* ("FMLA" or "the Act").  This matter comes before the Court on UCF's Motion
for Summary Judgment (Doc. 22) and Canaday's opposition thereto (Doc. 28).

## I. Background

   UCF first hired Canaday in 1987 as a student assistant. (Doc. 22-2  at 5).[1]  In 1989,
Canaday began working as a full-time custodian at UCF. (Doc 22-2 at 5).  In 1990 she left UCF,
returning in 1993 as a part-time student assistant in the interlibrary loan department.  (Doc 22-2 at
5).  In August 1995 Canaday became a full-time employee of the UCF interlibrary loan
department, where she would remain until April 2004. (Doc 22-2 at 6).

_____

[1]The deposition filed at Doc. 22 is formatted such that four deposition pages appear on a single
document page. Therefore, page references to Doc. 22 refer to the page number of that document,
rather than the page number of the deposition transcript.

In September 2002, Canaday received an oral reprimand from her supervisor, Meg Scharf ("Scharf"), for excessive absenteeism. (Doc. 22-2 at 13, Doc 22-6).  In February 2003, Canaday was given a written reprimand by Scharf because of her poor attendance.  (Doc. 22-2 at 14; Doc. 22-7).  In that reprimand Scharf warned Canaday about the adverse effects of taking unauthorized leave. (Doc. 22-7).  Scharf noted that Canaday was depleting her sick leave and annual leave time, necessitating the use of unauthorized leave without pay. (Doc 22-7). The memorandum also mentioned the availability of leave under the FMLA. (Doc. 22-7).  Plaintiff testified that she received and initialed this memorandum. (Doc. 22-2 at 10).  Canaday's absences continued, and in July of 2003 she was issued a second written reprimand. (Doc. 22-11).

In October 2003, Canaday met with Scharf, according to Canaday,  to  "let [Scharf] know what was going on with [her] as far as [her] health was concerned." (Doc. 22-3 at 13).  At this meeting, Canaday offered Scharf a copy of a letter written by her psychologist to her general practitioner. (Doc 22-3 at 13; Doc. 22-17). The letter indicated that her psychologist was treating her for "major depression" and recommended she remain on Prozac because it "had been effective." (Doc. 22-17). Canaday requested that Scharf place this letter in her file, but Scharf refused. (Doc. 22-3 at 14).  Canaday did not request any leave at this time. (Doc. 22-3 at 11-12).

On January 23, 2004 Canaday received a copy of a letter from the Director of Libraries at UCF, Barry Baker ("Baker"), to the Director of Human Resources, Mark Roberts ("Roberts"). (Doc. 22-3 at 6, Doc. 22-13).  In that letter, Baker noted that Canaday had missed twelve days of work since receiving her second written reprimand and had inquired about her accrued leave balance, indicating that she was planning a vacation. (Doc. 22-13).  According to Baker, Canaday never made a request for time off but had called in sick the last three days in a row. (Doc. 22-13).

Baker acknowledged that the administration suspected that Canaday was fabricating excuses to use sick leave rather than annual leave. (Doc. 22-13).

In February 2004, Canaday received a Predetermination Notice from Roberts, notifying her that due to her continuing absenteeism, UCF was moving to the fourth and final stage of discipline: discharge. (Doc. 22-3 at 7, Doc. 22-14). Roberts stated in the notice that Canaday had thirteen absences since her second written reprimand on July 18, 2003. (Doc. 22-14). Canaday did not then and does not now contest the accuracy of Roberts' statement in the Predetermination Notice. (Doc. 22-3 at 7).

Canaday testified that she missed work periodically because she was having lower back pain, sinus infections and headaches. (Doc. 22-3 at 7). Canaday believed that the medicine her doctor had prescribed, Fluoxetine, was causing her headaches. (Doc. 22-3 at 7). However, other than understanding that headaches may be a side effect of Fluoxetine, Canaday had no other evidence that her headaches were caused by the medication. (Doc. 22-3 at 7).

Before dismissing Canaday, UCF invited her to respond to the Predetermination Notice. (Doc. 22-14). At the final Predetermination Conference, Canaday provided a letter from her psychologist, Dr. Karen Larkey ("Dr. Larkey"). (Doc. 22-3 at 8; Doc. 22-15).

In Dr. Larkey's letter, she stated that she had been seeing Canaday on and off since September 2002 for treatment of "major depression." (Doc. 22-15). Dr. Larkey described Canaday's symptoms as alterations of mood, fearfulness, hypersomnia, and severe gastrointestinal distress. (Doc. 22-15). Dr. Larkey wrote that she understood that those symptoms had an impact on Canaday's job functioning, which led to a "medication regime." (Doc. 22-15). Dr. Larkey reported that the medications appeared to have been "very successful in reducing her symptoms."

(Doc. 22-15).  On March 10, 2004 Canaday provided a Certification of Physician to UCF signed by Dr. Larkey. (Doc. 22-3 at 8; Doc. 22-16).  In that Certification, Dr. Larkey advised that Canaday had been diagnosed with major depression but was still able to perform all the essential functions of her position. (Doc. 22-16).

In April 2004, Canaday received the final notice of her termination from UCF. (Doc. 22-3 at 9; Doc. 22-4). The final notice indicated that Canaday had been absent three days in a row in January 2004. (Doc. 22-4).  Canaday testified at her deposition she was absent because she was having stomach problems but did not know what had caused them. (Doc. 22-3 at 10).   Roberts noted in this final notice that Canaday had produced documentation indicating that she typically had doctor appointments monthly and acknowledged that such a schedule could easily have been accommodated with approval in advance under UCF's leave system. (Doc. 22-4).

Canaday testified that she never requested leave from UCF based on her depression. (Doc. 22-3 at 10, 11-12). Canaday also testified that she instead requested that UCF place her on a three-month probationary period to see if her medications would alleviate her symptoms. (Doc. 22-3 at 10-11).  Her request was denied and Canaday was terminated on April 15, 2004. (Doc. 22-4).

## II. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347,

1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[2]

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

---

[2]All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

### III. Legal Analysis

Plaintiff contends that Defendant interfered with her rights under the FMLA by failing to inform her of her possible FMLA benefits after she advised Scharf of her medical condition in October 2003. (Doc. 28).

The FMLA provides that eligible employees are entitled to a total of twelve workweeks of leave during any twelve month period for, *inter alia*, "a serious health condition that makes the employee unable to perform the essential functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).   A serious health condition, in turn, is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C.S. § 2611(11).

> In the Eleventh Circuit, there are two types of claims cognizable under the FMLA: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled, and retaliation claims, in which employers discharge employees for exercising their FMLA right to leave. 29 U.S.C. § 2615(a)(1) & (2) (1999); *see also O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000).

*Johnson v. Morehouse College*, 199 F. Supp. 2d 1345, 1353 (N.D. Ga. 2002).

To state an interference claim, "an employee need only demonstrate by a preponderance of the evidence that [she] was entitled to the benefit denied." *Strickland v. Water Works & Sewer Bd. of City of Birmingham, Ala.,* 239 F.3d 1199, 1206-7 (11th Cir. 2001). This test contains two prongs that Plaintiff must prove: (1) that she was entitled to a benefit and (2) that said  benefit was

denied. *See Snelling v. Stark Properties Inc.,* 2006 U.S. Dist. LEXIS 50272 at 20-1 (M.D. Ga. 2006).

Entitlement is demonstrated by a showing that the employee provided her employer with proper notice of her need to take leave and that the leave was necessitated by a serious health condition as defined by the FMLA. *Id.*

In the present case Plaintiff claims that Defendant interfered with her FMLA rights by failing to provide her with information about them. (Doc. 28 at 1). Plaintiff makes it clear that she is not asserting a claim for denial of benefits, only for interference. (Doc. 28 at 5). However, it appears that Plaintiff misinterprets the law in this area. The two types of FMLA claims are interference and *retaliation*, not interference and *denial*. Instead, denial of benefits is an element of an interference claim. Thus, because Plaintiff admits that she was not denied any benefits under the FMLA, Plaintiff destroys her own case. Plaintiff also admits several times that she never requested leave due to her depression and that the only accommodation she requested was a three-month probationary period. (Doc. 28-8, Doc. 22-3 at 10-12). Such an accommodation is not covered under the FMLA. The FMLA simply requires employers to permit qualified employees to take up to 12 workweeks of leave, as necessary due to a serious health condition, without suffering any adverse employment consequences. Finally, Plaintiff was notified of the availability of FMLA leave in the written reprimand she acknowledges receiving in September 2002, so she cannot claim that Defendant did not inform her of the availability of such leave. (Doc. 22-7). Thus, Plaintiff has failed to produce any evidence that Defendant denied her FMLA leave, failed to inform her of its availability, or otherwise interfered with her substantive rights under the act.

**IV. Conclusion**

For the reasons stated herein, Canaday has failed to produce evidence in support her claim of interference under the FMLA.  Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**. This case is removed from the December 2006 trial docket, and the Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 22, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party